IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RALORD ALLAH LAO TUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:15-cv-1216 (LMB/IDD) |
| | ) |
| JEH C. JOHNSON, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. Plaintiff Ralord Allah Lao Tung ("plaintiff" or "Tung") instituted this civil action pursuant to § 310(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1421(c), which provides that a person whose application for naturalization is denied after a hearing before an immigration officer may seek de novo review of such denial before the federal district court where that person resides.[1] Plaintiff argues that the United States Citizenship and Immigration Services ("USCIS") erred in denying his application, specifically by finding that his 1995 robbery conviction qualified as an "aggravated felony" under the INA which operated as an automatic bar to his ability to establish the "good moral character" required for a successful naturalization application. Plaintiff also contends that the waiver of deportation he received pursuant to former INA § 212(c) operated as a waiver or expungement of his conviction. The named defendants, all government officials,[2]

---

[1] The statute further provides that "the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

[2] The named defendants are: Jeh Charles Johnson, Secretary of Homeland Security; Sarah Taylor, District Director for USCIS; Kimberly Zanotti, Field Office Director for USCIS; Leon Rodriguez, Director of USCIS; Lori Scialabba, Acting Deputy Director of USCIS; and Loretta Lynch, Attorney General. The defendants contend that Attorney General Lynch is not properly

argue in response that the USCIS correctly found that plaintiff's conviction qualified as an "aggravated felony" because it was both a "theft offense" and a "crime of violence," that any "aggravated felony" conviction occurring on or after November 29, 1990 operates as an automatic bar to establishing "good moral character," and that the § 212(c) waiver did not change the impact of plaintiff's conviction on his naturalization application.

I. BACKGROUND

Plaintiff is a citizen of the Republic of China ("Taiwan"), Pet. for Review & Hr'g De Novo of Den. of Naturalization Appl. [Dkt. No. 1] ("Compl.") ¶ 8, where he was born and lived until the age of five, when his family moved to South America. N-400 Appl. for Naturalization [Dkt. No. 16-3] ("Naturalization Appl.") at 7, 52. Plaintiff and his family moved to the United States in 1991, id. at 52, and plaintiff received permanent resident status in immigration classification P63 (child of an alien classified as P61 or P66—needed skilled or unskilled worker). Decision [Dkt. No. 16-7] ("Reaffirmance") at 1.

On February 3, 1995, when plaintiff was 18 years old, he was arrested in Fairfax, Virginia and charged with Robbery and Use of Firearm in the Commission of a Felony. Id. According to the probation and parole officer's report submitted by plaintiff with his naturalization application, plaintiff convinced three minors to participate in a robbery of a pizza deliveryman on January 29, 1995. Naturalization Appl. at 47. After tricking the deliveryman into driving to a neighbor's home, plaintiff and his co-conspirators trapped the deliveryman in the parking lot. Id. Plaintiff then pointed a shotgun at the victim's head, "racked" the firearm, and took $40.00 from the victim's pocket. Id. at 48. Plaintiff admitted to robbing the deliveryman

---

named as a defendant in this action because she "has no role in the events at issue" and should therefore be dismissed. Defs.' Br. at 2 n.1. The plaintiff does not respond to this contention, but it is immaterial because summary judgment will be granted to all defendants.

2

and to holding the shotgun, but denied ever threatening the victim or pointing the gun at him. Id. The firearm charge was nolle prossed, and plaintiff pleaded guilty to robbery in violation of Va. Code Ann. § 18.2-58 in the Circuit Court of Fairfax County on September 22, 1995. Compl. ¶ 9. Plaintiff was sentenced to five years imprisonment, although it appears he served less than two years because on September 8, 1997, plaintiff was placed in removal proceedings based on his robbery conviction and on a separate, 1995 conviction for marijuana distribution. Id. ¶ 10. He later received a waiver of deportation under INA § 212(c) and an adjustment of status to lawful permanent resident in immigrant classification E35 (child of a skilled worker or professional). Id.

In the intervening period between receiving that waiver and instituting this civil action, plaintiff graduated from George Mason University with a Bachelor of Arts in Communication and worked at a nightclub in the District of Columbia for a number of years. Naturalization Appl. at 42-43. Plaintiff has two U.S. citizen children. Id. at 37-38. As of October of 2014, plaintiff was engaged to the children's mother; their current marital status is unclear.[3] N-336 Request for a Hr'g on a Decision in Naturalization Proceedings [Dkt. No. 16-6] ("Request for Hr'g") at 13.

On June 11, 2014, plaintiff filed an N-400 Application for Naturalization, which the USCIS denied on September 30, 2014. Compl. ¶¶ 11-12. The USCIS stated in its decision that the plaintiff's robbery conviction was considered "both a theft offense and a crime of violence," and that because plaintiff was sentenced to a term of imprisonment of more than one year, the conviction constituted an "aggravated felony" under the terms of the INA. Decision [Dkt. No. 16-5] ("Denial of Appl.") at 2. The USCIS further found that plaintiff's conviction of an "aggravated felony" on or after November 29, 1990, permanently barred him from establishing

---

[3] Some of this information was contradicted by plaintiff's counsel during oral argument; however, the facts as stated above are those contained in the administrative record on which the parties agreed to rely.

3

"good moral character" and therefore rendered him ineligible for naturalization. Id. On October 31, 2014, plaintiff filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. Compl. ¶ 13. A hearing was held on December 14, 2014, and on June 12, 2015, the USCIS reaffirmed its decision to deny plaintiff's application. Reaffirmance at 1-3. In doing so, the USCIS explained again, in greater detail, why plaintiff was ineligible for naturalization. Id. at 4-7.

The plaintiff filed this civil action seeking de novo review of the denial of his application for naturalization. The parties agreed that discovery was not necessary and that the matter could be decided on their dispositive motions and the Administrative Record of the USCIS proceedings. Agreed Order [Dkt. No. 7], Nov. 5, 2015. The Court now has before it the parties' cross-motions for summary judgment and has heard oral argument on the motions. The parties agree that the action presents only "a question of law that is amenable to disposition on summary judgment" and that "none of the facts material to the resolution of this action are in dispute." Mem. in Supp. of Defs.' Cross Mot. for Summ. J. & In Opp'n to Pl.'s Mot. for Summ. J. [Dkt. No. 24] ("Defs.' Br.") at 10.

## II. DISCUSSION

Plaintiff raises three arguments, all of which he raised before the USCIS and all of which the USCIS rejected. Plaintiff argues first that his robbery conviction does not qualify as an "aggravated felony" because it is not a "crime of violence." Plaintiff further argues that even if the conviction does qualify as an "aggravated felony," it cannot disqualify him from proving "good moral character" because it occurred outside of the five-year period before his application was filed and because he is fully rehabilitated and has been a person of good moral character during the relevant statutory period. Finally, plaintiff argues that his robbery conviction should

not be considered in ruling on his application because he received the § 212(c) waiver. The defendants respond that plaintiff's conviction is an "aggravated felony" because it qualifies as both a "theft offense" and a "crime of violence," that any "aggravated felony" committed on or after November 29, 1990 acts as a permanent bar to establishing "good moral character," and that the waiver of deportation does not have any effect on plaintiff's conviction.

### A. Standard of Review

Summary judgment is appropriate where the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of an application for naturalization, the applicant bears the burden of demonstrating "his eligibility for citizenship in every respect." INS v. Pangilinan, 486 U.S. 875, 886 (1988) (quoting Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967)) (internal quotation marks omitted); see also Rogers v. Bellei, 401 U.S. 815, 839 (1971) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with." (quoting United States v. Ginsberg, 243 U.S. 472, 475 (1917) (internal quotation marks omitted)). "[A]ny doubts regarding an applicant's eligibility for naturalization 'should be resolved in favor of the United States and against the claimant.'" Nesari v. Taylor, 806 F. Supp. 2d 848, 863 (E.D. Va. 2011) (quoting Berenyi, 385 U.S. at 637 (1967)). The INA provides that "[n]o person . . . shall be naturalized unless such applicant" meets certain requirements, including establishing that "during all the periods referred to in this subsection [he] has been and still is a person of good moral character." INA § 316(a), 8 U.S.C. § 1427(a); see also 8 C.F.R. § 316.10(a)(1) ("An applicant...bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character.").

An applicant for naturalization will be barred from establishing "good moral character" if he has been convicted of an "aggravated felony" as defined by INA § 101(a)(43) during the relevant time period. INA § 101(f)(8), 8 U.S.C. § 1101(f)(8) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)."). Most relevant to this action, an "aggravated felony" is defined as including "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year," INA § 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), or "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).

### B. Aggravated Felony

The first issue is whether plaintiff's 1995 robbery conviction qualifies as an "aggravated felony" within the meaning of the INA. The USCIS found that it did because it was both a "theft offense" and a "crime of violence." Denial of Appl. at 2. Despite these two findings, plaintiff's brief focuses exclusively on the finding that the conviction was for a "crime of violence" and does not address the USCIS finding that the conviction was also a "theft offense."[4] See Pl.'s Mem. in Supp. of His Mot. for Summ. J. [Dkt. No. 20-1] ("Pl.'s Br.") at 5.

To determine whether a conviction for a state-law crime qualifies as an "aggravated felony," courts employ the "categorical approach," under which they "'consider only the elements of the statute of conviction rather than the defendant's conduct underlying the offense,'

---

[4] Similarly, in plaintiff's complaint, he states that the USCIS determined that the crime was a "crime of violence" and does not refer to the finding that it was also a "theft offense." Compl. ¶ 12.

6

and compare them with the elements of the 'generic' crime" as defined by the INA. Etienne v. Lynch, ---F.3d---, No. 14-2013, 2015 WL 9487933, at *6 (4th Cir. Dec. 30, 2015) (quoting Omargharib v. Holder, 775 F.3d 192, 196 (4th Cir. 2014)). If the state crime "has the same elements as the generic INA crime, then the prior conviction constitutes an aggravated felony," but if the state crime "sweeps more broadly . . . , the prior conviction cannot count as an aggravated felony." Id. (quoting Omargharib, 775 F.3d at 196) (internal quotation marks omitted); see also Descamps v. United States, 133 S.Ct. 2276, 2283 (2013) (a conviction constitutes a "predicate offense" under the Armed Career Criminal Act ("ACCA") where the state offense has the same elements as the generic ACCA crime or where the state offense is defined "more narrowly" than the generic ACCA crime).

Virginia law defines robbery, a common law offense, as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Williams v. Commonwealth, 685 S.E.2d 178, 180 (Va. 2009) (quoting Commonwealth v. Jones, 591 S.E.2d 68, 70 (Va. 2004)) (internal quotation marks omitted). The violence or intimidation "must occur before or at the time of the taking." Jones, 591 S.E.2d at 70 (quoting Branch v. Commonwealth, 300 S.E.2d 758, 759 (Va. 1983)) (internal quotation marks omitted). The Virginia Code provides that the crime of robbery is punishable "for life or any term not less than five years." Va. Code Ann. § 18.2-58.

The Board of Immigration Appeals ("BIA") has defined "theft offense" as a crime that "consists of the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." Castillo v. Holder, 776 F.3d 262, 267 (quoting In re Garcia-Madruga, 24 I&N Dec. 436, 440 (BIA 2008)). Comparison of the elements of the two

7

offenses demonstrates that the common law crime of robbery in Virginia has the same elements as the INA generic "theft offense." See United States v. Alvarado-Pineda, 774 F.3d 1198, 1202-03 (9th Cir. 2014) (finding that a robbery conviction under a Washington statute similar to the VA common law definition of robbery constituted a "theft offense" under INA § 101(a)(43)(G)). Accordingly, and particularly in the absence of any contrary authority provided by the plaintiff, the USCIS did not err in finding that plaintiff's robbery conviction was a "theft offense" and consequently was an "aggravated felony" for the purposes of the INA.

Plaintiff fails to address the "theft offense" issue, focusing instead on whether the USCIS correctly found that his robbery conviction qualified as a "crime of violence" as defined by the INA. The INA definition explicitly incorporates 18 U.S.C. § 16, which defines a "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Although the USCIS only discussed § 16(b) in its decisions, the government now contends that the plaintiff's robbery conviction qualifies as a "crime of violence" under both § 16(a) and § 16(b). Defs.' Br. at 15.

A comparison of the elements of Virginia common law robbery with § 16(a) demonstrates that plaintiff's conviction easily falls within the definition of a "crime of violence." Robbery requires the use of "violence or intimidation," while § 16(a) includes any offense that involves the "attempted use, or threatened use of physical force against the person or property of another." The Fourth Circuit has found, in interpreting the Armed Career Criminal Act that because "[v]iolence is the use of force" and "[i]ntimidation is the threat of the use of force,"

8

"robbery in Virginia has as an element the use or threatened use of force." United States v. Presley, 52 F.3d 64, 69 (4th Cir. 1995). Accordingly, the elements of the two offenses correspond and demonstrate that plaintiff's robbery conviction constitutes a "crime of violence" as defined by §16(a).

For similar reasons, the Virginia robbery offense satisfies § 16(b) by including the element of "violence or intimidation," which element shows that robbery "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Authority provided by the defendants demonstrates that at least two federal courts have made such a finding with respect to similar definitions of common law robbery. See Defs.' Br. at 18 (citing Thap v. Mukasey, 544 F.3d 674, 677 (6th Cir. 2008) and United States v. Valladares, 304 F.3d 1300, 1302 (8th Cir. 2002)).[5]

Plaintiff echoes the Thap plaintiff's losing argument, citing the Supreme Court's decision in Johnson v. United States, 559 U.S. 133 (2010) to argue that "physical force" as used in 18 U.S.C. § 16 means "violent force" that is "capable of causing physical pain or injury to another person," Johnson, 559 U.S. at 140 (emphasis omitted), whereas in Virginia the robbery offense only requires "slight" violence that does not rise to the level of "violent force." See Pl.'s Br. at 5 (citing Maxwell v. Commonwealth, 183 S.E. 452, 454 (Va. 1936) (quoting Houston v. Commonwealth, 12 S.E. 385, 387 (Va. 1890) ( "[A]nything which calls out resistance is

---

[5] For example, in Thap v. Mukasey, the Sixth Circuit determined that a robbery conviction under California Penal Code § 211, which defined robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear," qualified as a "crime of violence" under § 16(b) because it involved "a substantial risk that physical force" would be used. Thap, 544 F.3d at 677. The Sixth Circuit also rejected the plaintiff's contention that the California Penal Code differed from the INA by requiring mere "force" instead of "physical force." Id. Similarly, the Eighth Circuit ruled that "robbery as defined in the California Penal Code is a crime of violence within the meaning of 18 U.S.C. § 16(b)." Valladares, 304 F.3d at 1302.

9

sufficient" to meet the element of violence)). Plaintiff also argues that a finding of intimidation similarly does not meet this standard of "violent force" because "mere threatening words or gestures" are "sufficient to constitute intimidation." Id.

Defendants respond that force would not "call[] out resistance" if it were not "capable of causing physical pain or injury to another person" and that the Presley decision is controlling and not undermined by Johnson. Defs.' Br. at 17. Defendants also identify an unpublished Fourth Circuit decision issued later in 2010—and therefore after Johnson was decided[6]—that held that a conviction for robbery constitutes a "crime of violence" as generally defined in 18 U.S.C. § 16 and is therefore an aggravated felony for immigration purposes. Gao v. Holder, 392 F. App'x 164, 165 (4th Cir. 2010)). Absent additional authority provided by the plaintiff and in light of the Fourth Circuit decisions in Presley and Gao, defendants have the stronger argument that plaintiff's robbery conviction qualifies as a "crime of violence" and is therefore an "aggravated felony" on that basis in addition to being a "theft offense."

Plaintiff also disputes whether he committed a "crime of violence" based on the facts underlying his conviction, arguing that he did not actually point a gun at the pizza delivery man and never threatened him in any way. Pl.'s Br. at 6. The categorical approach examines only the elements of the crime for which the plaintiff was convicted, not the underlying conduct of that offense; therefore, plaintiff's factual contentions are irrelevant. See Etienne, 2015 WL 9487933, at *6.[7]

---

[6] Johnson was decided on March 2, 2010, while Gao was decided on August 20, 2010.
[7] In situations where a state offense is "divisible," meaning that it "list[s] potential offense elements in the alternative" in a way that "renders opaque which element played a part in the defendant's conviction," courts may employ a "modified categorical approach" under which they "may look beyond the statutory elements to the 'charging paper and jury instructions' used in a case." Descamps, 133 S.Ct. at 2283-84 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)). Neither party contends that the modified categorical approach applies with respect to

Accordingly, plaintiff's robbery conviction qualifies as an "aggravated felony" for the purposes of the INA because it is both a "theft offense" and a "crime of violence."

### C. Good Moral Character

The plaintiff argues that even if his robbery conviction constituted an "aggravated felony," that conviction should not be an automatic bar to establishing "good moral character" because it occurred more than five years before he filed his application. Among other eligibility requirements for naturalization, an applicant must establish that he has "resided continuously . . . within the United States for at least five years" and that "during all the periods referred to in this subsection," he "has been and still is a person of good moral character." INA § 316(a), 8 U.S.C. § 1427(a). The plaintiff argues that the language of this section demonstrates that the five-year period of required residence is also the time period during which "good moral character" should be evaluated and the only time during which an "aggravated felony" can be an automatic bar to naturalization. Pl.'s Br. at 6.

Plaintiff fails to acknowledge, however, the Immigration Act of 1990 ("IMMACT"), which amended the INA and specifically the scope of the "aggravated felony" bar. See Pub. L. 101-649, § 509, 104 Stat. 4978, 5051 (Nov. 29, 1990). Before 1990, the only permanent bar to establishing "good moral character" was a murder conviction, 8 U.S.C. § 1101(f) (1989), but IMMACT established that "if a person is 'convicted' of an aggravated felony after the date of enactment of the statute, November 29, 1990, that person is statutorily precluded from establishing the 'good moral character' required for naturalization." Puello v. Bureau of Citizenship & Immigration Servs., 511 F.3d 324, 325 (2d Cir. 2007) (citing 8 U.S.C. § 1101(f)(8) and 8 C.F.R. § 316.10(b)(1)(ii)); see also Lawson v. USCIS, 795 F. Supp. 2d 283,

---

Virginia robbery, see Defs.' Br. at 12 n.6; accordingly, the factual basis for plaintiff's conviction is irrelevant.

11

296 (S.D.N.Y. 2011) (finding that because the applicant's "aggravated felony" conviction occurred in 1986, "the statutory bar for a conviction... for an aggravated felony on or after November 29, 1990 [did] not apply"); Moore v. James, 770 F. Supp. 2d 786, 789-90 (E.D. Va. 2011) (applicant admitted that his 2004 convictions constituted aggravated felonies and conceded that those convictions were a bar to establishing "good moral character" under § 1427 because they occurred after November 29, 1990).

Specifically, the INA as amended by IMMACT now states that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who at any time has been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8). Although the language "at any time" is broad, the regulations clarify that "[a]n applicant shall be found to lack good moral character, if the applicant has been...[c]onvicted of an aggravated felony as defined in section 101(a)(43) of the Act on or after November 29, 1990." 8 C.F.R. § 316.10(b)(1)(ii); see also Iqbal v. Bryson, 604 F. Supp. 2d 822, 825 (E.D. Va. 2009) ("The regulation applicable to the good moral character requirement further establishes that an applicant will be found to lack good moral character if he has been convicted of an aggravated felony... on or after November 29, 1990."). Accordingly, when an applicant has committed an "aggravated felony" within the terms of the INA, the relevant time period for establishing "good moral character" is the time period on or after November 29, 1990, not the five-year period immediately preceding his naturalization application.[8]

---

[8] Additionally, the INA provides that in determining whether an applicant has established "good moral character," the USCIS "shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." INA § 316(e), 8 U.S.C. § 1427(e). Therefore, even if a conviction of an "aggravated felony" after 1990 were

Plaintiff does not address the impact of the 1990 amendments on his claims. Instead, he relies on several pre-1990 cases for the proposition that the statutory disqualification arising from an "aggravated felony" conviction is limited to a conviction committed within the five years preceding applying for naturalization. See Pl.'s Br. at 7. For example, plaintiff cites to Posusta v. United States, 285 F.2d 533 (2d Cir. 1961) for the proposition that the "good moral character" determination is a "forward-looking" one, Pl.'s Br. at 7;[9] however, Posusta was decided almost 30 years before IMMACT and has no bearing on the clear statutory bar it established with respect to an "aggravated felony" conviction. Furthermore, defendants correctly argue that the only post-1990 cases to which plaintiff cites concern either "aggravated felony" convictions that pre-dated November 29, 1990, see Santamaria-Ames v. INS, 104 F.3d 1127, 1129-33 (9th Cir. 1996) (ruling that where there was no record of the applicant committing a crime after April of 1989, his pre-regulatory period conduct could be considered but his naturalization application could not be denied solely on the basis of that conduct), or misdemeanor convictions. See Ikenokwalu-White v. INS, 316 F.3d 798, 802 n.6, 804 (8th Cir. 2003) (stating that the government did not rely on the "aggravated felony" bar in its case against the applicant and that the convictions at issue were expunged misdemeanor convictions).

Although plaintiff's authority is inapplicable to his situation, defendants provide persuasive authority that is analogous to the action at bar. In particular, defendants cite to the Second Circuit's decision in Chan v. Gantner, 464 F.3d 289 (2d Cir. 2006), where the court rejected an applicant's arguments that only the five-year residence period applied to his 1992 "aggravated felony" conviction and that the § 212(c) waiver of deportation he received waived

---

not an automatic bar, it would still be permissible for the USCIS to take it into consideration even though it occurred outside of the five-year period.
[9] Plaintiff almost exclusively relied on Posusta at oral argument when responding to the Court's questioning regarding the impact of the 1990 amendments.

that conviction. The Chan court confirmed that "an applicant convicted of an aggravated felony is precluded under 8 U.S.C. § 1101(f)(8) from establishing good moral character regardless of when the conviction occurred" and that "section 1101(f)'s reference to 'the period for which good moral character is required to be established' is only an 'acknowledgment that the various provisions of chapter twelve attach different chronological conditions to the good moral character requirement contained in each.'" Id. at 294 (quoting Boatswain v. Gonzales, 414 F.3d 413, 418 (2d Cir. 2005)). The court reasoned that accordingly, "'during the period for which good moral character is required,'—i.e. 'the five years immediately preceding the date of filing his application,'" id. (quoting 8 U.S.C. § 1427(a)), the applicant "remained one who at any time has been convicted of an aggravated felony," and affirmed the denial of his application for naturalization. Id. (quoting 8 U.S.C. § 1101(f)) (internal quotation marks omitted).

Although plaintiff has shown that he has been rehabilitated since his 1995 conviction, that rehabilitation is irrelevant given the statutory and judicial authorities which establish that his 1995 conviction is an absolute bar to establishing the required "good moral character," and he is therefore ineligible for naturalization.

### D. Section 212(c) Waiver

Plaintiff briefly argues in the alternative that his robbery conviction should no longer be considered because he received a § 212(c) waiver of deportation[10] that he claims "waived that conviction and fully restored the plaintiff to [the status] of a permanent resident eligible to apply for naturalization." Pl.'s Br. at 8. Plaintiff does not cite any authority supporting this proposition.

---

[10] Section 212(c) of the INA was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), but relief under it "remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." INS v. St. Cyr, 533 U.S. 289, 326 (2001).

14

Moreover, the defendants again provide authority demonstrating that plaintiff's reading of the law is incorrect. As an initial matter, the INA provides that "the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien...shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization." INA § 318, 8 U.S.C. § 1429. Accordingly, the clear terms of the INA indicate that a § 212(c) waiver of deportation does not prevent the Attorney General from later finding that an applicant is ineligible for naturalization.

Furthermore, the Chan court addressed this specific question and found that in determining whether to grant an application for naturalization it was "entirely appropriate for the government to consider a conviction even if the alien has subsequently received a section 212(c) waiver because: 'section 212(c) merely provides that an alien may be...allowed to remain in the United States despite a finding of excludability or deportability;'" therefore, the waiver does not constitute "'a pardon or expungement of the conviction itself.'" Chan, 464 F.3d at 295 (quoting Matter of Balderas, 20 I&N Dec. 389, 391 (BIA 1991)).

Although there does not appear to be any precedent from this Circuit on this question, the defendants provide additional authority from a number of federal courts demonstrating that a § 212(c) waiver does not expunge a conviction or prevent the government from considering the conviction with respect to naturalization or other forms of immigration relief. See Alocozy v. USCIS, 704 F.3d 795, 797-98 (9th Cir. 2012) ("There is nothing . . . even remotely suggesting that when a removable alien is granted discretionary relief in the form of a waiver of deportation, the Government waives any objection based on the ground for which he was removable to his naturalization as a citizen."); Esquivel v. Mukasey, 543 F.3d 919, 922 (7th Cir. 2008) ("The BIA has established that a § 212(c) waiver does not waive the basis for excludability itself; it merely

15

waives the <u>finding</u> of excludability." (emphasis in original)); <u>Amouzadeh v. Winfrey</u>, 467 F.3d 451, 458-59 (5th Cir. 2006) ("A waiver under section 212(c) does not remove an aggravated felony conviction from an alien's record."); <u>Kalil v. U.S. Att'y Gen.</u>, 198 F. App'x 910, 913 (11th Cir. 2006) (Even if plaintiff could obtain a § 212(c) waiver for his "1995 drug conviction, that conviction [would] remain[] an 'aggravated felony' for purposes of the cancellation statute."); <u>Rodriguez-Munoz v. Gonzales</u>, 419 F.3d 245, 248 (3d Cir. 2005) (Even if plaintiff's deportation were waived by § 212(c) relief, his conviction "would nonetheless remain an aggravated felony for purposes of precluding his application for cancellation of removal under § 240A."). The plaintiff provides no reason for this Court to ignore the consensus that a § 212(c) waiver has no effect on the underlying basis for deportability and does not "waive" or "expunge" an "aggravated felony" conviction.

Finally, an immigration judge's decision whether to award a § 212(c) waiver does not require a finding of "good moral character" and instead involves balancing "adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether" granting § 212(c) relief is "in the best interests of this country." <u>Chan</u>, 464 F.3d at 295 (quoting <u>In re Marin</u>, 16 I&N Dec. 581, 584 (BIA 1978)) (internal quotation marks omitted). Accordingly, plaintiff's receipt of a § 212(c) waiver had no impact on the status of his robbery conviction and has no bearing on the question of whether he can establish eligibility for naturalization.

III. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 10 day of February, 2016.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia